UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:04-cv-71/1:99-cr-74 |
| | ) | *Collier* |
| CHARLES LOYD "BOBO" BROOKS | ) | |

### MEMORANDUM

This matter comes before the Court on the motion of *pro se* movant Charles Loyd "Bobo" Brooks ("Brooks" or "movant") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No.1). Brooks filed a brief in support of his motion (Court File No. 1) and, pursuant to the Court's Order (Court File No. 3), the United States filed a response (Court File No. 2). The Court finds the filed documents, together with the complete record of the underlying criminal case, conclusively show Brooks is not entitled to relief on the claims asserted in his petition. Accordingly, the Court will dispose of the § 2255 motion without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), *cert. denied*, 508 U.S. 943 (1993), and will **DENY** Brooks motion for the following reasons.

**I.    MOTIONS**

Also before the Court are Brooks' motions requesting the district court to take judicial notice of *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005) (Court File Nos. 5, 8). In addition, Brooks has filed a motion pursuant to Rule 15(d) of the *Federal Rules of Civil Procedure* to supplement his brief with a *Blakely* claim (Court File No. 6). Brooks is requesting to amend his original § 2255 motion with a new claim.

The Court must determine whether the amendment was timely filed as Brooks' proposed

amendment is subject to the one year statute of limitations period applicable to a motion filed pursuant to 28 U.S.C. 2255. *See Oleson v. United States*, 27 Fed. Appx. 566 (6th Cir. 2001) (unpublished table decision), *available in* 2001 WL 1631828 *3. However, under these circumstances the Court must look not to the general one-year statute of limitations and equitable tolling, but rather to the restarting of the statute of limitations applicable to § 2255 motions on the date *Blakely* and *Booker* were decided.[1]

*Blakely* was decided on June 24, 2004, and *Booker* was decided on January 12, 2005.[2] However, neither *Blakely* nor *Booker* announced it was retroactively applicable. The Supreme Court's decision in *Schriro v. Summerlin*, 124 S.Ct. 2519 (2004),[3] indicates it is unlikely *Blakely* will be given retroactive effect in the future. The Court's research indicates the majority of courts

---

[1] A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the supreme court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2255(3).

[2] Had the Supreme Court made *Blakely* or *Booker* retroactively applicable to cases on collateral review Brooks amendment would be timely, as the one-year statute of limitations would not have begun to run until the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" 28 U.S.C. § 2255 (3).

[3] The Supreme Court determined their previous decision in *Ring v. Arizona*, 536 U.S. 584 (2002) where they held a sentencing judge sitting without a jury may not find an aggravating circumstance necessary for the imposition of the death penalty because those circumstances must be found by a jury, was a procedural rule and consequently, did not apply retroactively to death penalty cases already final on direct review.

2

who have addressed this issue have determined neither *Blakely* nor *Booker* are applicable to cases that were final prior to the Supreme Court's decision in those cases. *See Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (The Sixth Circuit concluded that *Booker*'s rule does not apply retroactively in collateral proceedings); *In re Anderson* 2005 WL 123923 (11th Cir. Jan. 21, 2005) ("It follows that because *Booker*, like *Blakely* and *Ring*, is based on an extension of *Apprendi*, Anderson cannot show that the Supreme Court has made that decision [*Booker*] retroactive to cases already final on direct review."); *Hamlin v. United States,* 2005 WL 102959 (D. Me. Jan. 19, 2005) (interpreted *Booker* to apply only to cases on direct review); *Stevens v. United States*, 2005 WL 102958 (D. Me. Jan. 18, 2005) (concluded *Booker* should not be applied retroactively to cases where the claim was not raised on direct review); *United States v. Harp*, 2004 WL 1636251 (N.D. Iowa July 22, 2004) (collateral relief requested in light of *Blakely* denied); *United States v. Traeger*, 325 F. Supp.2d 860 (N.D. Ill., 2004) (concluded *Blakely* decision did not apply retroactively).

In the future, if the Supreme Court makes *Blakely* or *Booker* retroactively applicable to cases on collateral review, Brooks can make application for relief at that time. However, at this time Brooks has no viable claim under *Blakely* or *Booker*.

Accordingly, Brooks motion for the district court to take judicial notice (Court File Nos. 5, 8), and motion to amend (Court File No. 6) are **DENIED** because such a claim is futile in light of the fact the Supreme Court has not instructed that *Blakely* or *Booker* should apply retroactively to cases pending on collateral review.

## II.     28 U.S.C. § 2255 - STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972);[4] *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo,* 454 F.2d at 53; *O'Malley,* 285 F.2d at 735 (citations omitted); *Mayes v. United States*, 93 F. Supp.2d 882, 887 (E. D. Tenn 2000). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959); *Mayes,* 93 F. Supp.2d at 887; *United States v. Johnson,* 940 F.Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the

---

[4] *Green v. Wingo* involves a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, with respect to a state conviction. Nevertheless, §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other. *Davis v. United States,* 417 U.S. 333, 343-44 (1974); *Metheny v. Hamby,* 835 F.2d 672, 673-74 (6th Cir. 1987), *cert. denied,* 488 U.S. 913 (1988).

proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States,* 368 U.S. 424, 428 (1962); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas,* 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States,* 582 F.2d 1039, 1041 (6th Cir.), *cert. denied,* 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. at 354; *Grant v. United States,* 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 517 U.S. 1200 (1996).

"On collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998), *quoting Brecht v. Abrahamson,* 507 U.S. at 637. "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair,* 157 F.3d at 430, *quoting United States v. Frady,* 456 U.S. 152, 166 (1982). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair,* 157 F.3d at 430; *Gall v. United States,* 21 F.3d 107, 109 (6th Cir. 1994). A defendant bears the burden of establishing any claim asserted in his § 2255 motion. *Mayes v. United States,* 93 F.Supp.2d at 886

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they show conclusively defendant is not entitled to relief

5

on the claim asserted. Accordingly, the Court will decide the matter and explain the reasons petitioner's asserted grounds for relief are without merit. *See United States v. Todaro,* 982 F.2d 1025, 1028 (6th Cir.), *cert. denied,* 508 U.S. 943 (1993).

III.     **PROCEDURAL HISTORY**

On March 21, 2000, a jury found Brooks guilty of Count One of a second superseding indictment charging him with conspiring to commit violations of 21 U.S.C. § 841(a)(1) to manufacture methamphetamine in violation of 21 U.S.C. § 846. Brooks was subsequently sentenced to the custody of the United States Bureau of Prisons to be imprisoned for a term of 360 months. Brooks appealed his conviction and sentence challenging "(1) the district court's decision not to disqualify the Assistant United States Attorney who handled his case at trial; (2) the court's rulings on his motions to suppress and on various challenges to the admissibility of evidence at trial; and (3) the validity of his sentence." *United States v. Brooks*, 41 Fed.Appx. 718 (6th Cir. 2002) (unpublished table decision), *available in* 2002 WL 1021904 (6th Cir. 2002). The Sixth Circuit affirmed his conviction but concluded "that the United States Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466 [] (2000), released a short time after the sentencing hearing in this case, requires a remand for resentencing." *United States v. Brooks*, 41 Fed.Appx. 718 (6th Cir. 2002) (unpublished table decision), *available in* 2002 WL 1021904 (6th Cir. 2002). On August 8, 2003, Brooks appeared before the undersigned for resentencing under *Apprendi*. Brooks was resentenced to 180 months imprisonment, which is below the 20 year maximum. Brooks original term of 5 years on supervised release was reduced to 3 years. Brooks filed this *pro se* § 2255 motion on February 25, 2004.

6

## IV. FACTS

The following recitation of facts is taken from the Sixth Circuit's opinion:

This case began with the execution of a valid search warrant at the home of Ronnie Moore in Ringgold, Georgia, where the federal agents found methamphetamine cooking in a lab on the second floor of Moore's garage. Moore admitted to manufacturing methamphetamine and identified a man named "Bo," later identified as the defendant, as his source for red phosphorus, a precursor chemical used in the manufacturing process. Moore made a recorded phone call to defendant Brooks, during which he ordered two ounces of red phosphorus and arranged to meet Brooks that afternoon at a local restaurant.

When Brooks arrived at the restaurant, sheriff's deputies arrested and handcuffed him. A few minutes later, Detective Sergeant Tommy Farmer and Drug Enforcement Administration Special Agents David Shelton and David Gray arrived and began talking with Brooks in the parking lot of the restaurant. The officers were dressed in street clothes and were armed, although their weapons were neither drawn nor "overtly visible." Shelton advised Brooks that he was charged with conspiracy to manufacture methamphetamine. Brooks denied any involvement in a conspiracy to manufacture methamphetamine but told the officers that he had red phosphorus in his car and that, according to his research, it was not illegal to possess red phosphorus. In fact, other agents had found the two ounces of red phosphorus in Brooks's car, which was in the parking lot. Shelton informed Brooks that he did not have to say anything and began to give him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Brooks interrupted Shelton and told him that he already knew his rights because he had spent time in federal prison.

After some discussion, Brooks told the agents that they were welcome to search his home in Tennessee because he was on parole and he would not keep "anything illegal" in his home. According to the officer, the tenor of the conversation in the parking lot was "low-key," and Brooks appeared friendly, relaxed, intelligent, and knowledgeable about his rights.

Shelton described Brooks's home as a converted garage that was small enough that one could see all of the other rooms from almost any place in the house and that the officers searched the entire three-room house in any place where they thought red phosphorous could be stored. (According to Shelton, red phosphorous is a powdery substance like paprika that is most commonly stored in bags or bottles or jars but that can be kept in envelopes or coffee filters or between paper towels or pieces of paper-- essentially "in anything that you could put paprika or chili powder in.") Although he testified that he was "primarily" looking for red phosphorous or drugs, he did

7

concede that he was also looking for "anything of an incriminating nature."

As Brooks predicted, the agents did not find any red phosphorous in the house; however, they did find several other pieces of incriminating evidence that would later be admitted into evidence at Brooks's trial, including several money order receipts, blank order forms, and miscellaneous pieces of paper with the name and phone number of a company called Pyrotek, all of which was found in the drawer of a night stand. Shelton testified that "almost immediately" after he opened the drawer, "something with Pyrotek . . . stuck out" and that he instantaneously recognized the name "Pyreotek," which he knew from previous investigations was a distributor of red phosphorous.

Among the papers in the drawer of the night stand, Shelton also found a Wal-Mart receipt for 8-10 bottles of HEET antifreeze, which he identified as a solvent commonly used in the production of methamphetamine. Shelton testified that although the Wal-Mart receipt was small, he immediately noticed the HEET because it was printed seven to eight times in a row on the receipt.

On an end table next to the couch in the front room, Shelton found an address book that contained several potentially incriminating markings: a note on one page stated "150 grams of phed, 50 grams of red, 300 iodine," a note on another page stated "ephederine, Smart, pH control in pools, muriatic acid, 31.45 percent HCl" and a third note stated "1 P, 1 1/2E, and 21," which the government interpreted as ingredients and ratios for the manufacture of methamphetamine. The address book also contained various notes which seemed to indicate people to whom Brooks owed money, or who owned Brooks money.

Finally, another officer looking for red phosphorus opened a small box that he found in an end table by the couch in the front room and discovered a "partial recipe for manufacturing methamphetamine."

A federal grand jury indicted Brooks for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1), but did not specify the amount of drugs involved. Before trial, Brooks moved to suppress the evidence seized from his home on the grounds that his consent was not voluntarily given and that the search conducted exceeded the scope of his consent. With respect to the second issue, Brooks testified at a suppression hearing that he thought that the agents were going to search his house only for red phosphorous and that he consented only to a search for red phosphorous. Brooks testified that when he saw the agents seize evidence that was not red phosphorous, he protested. However, according to one of the agents who was involved in the search, Brooks did not say anything to indicate that he was withdrawing his consent or limiting the scope of the consent when he saw the agents seize evidence that was not red phosphorous, and the district court credited the agent's testimony over that of Brooks and ruled that the scope of the

8

search was not excessive.

After evidentiary hearings, the district court found, based on its analysis of the factors set forth in *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998), that Brooks's consent to the search of his home was voluntary. The district court also rejected Brooks's challenge to the search of his home was voluntary. The district court also rejected Brooks's challenge to the search as outside the scope of his consent, finding that "Brooks' denial of having any illegal matter in the house, combined with his offer to permit the officers to search his house, would lead a reasonable person to conclude that Brooks was consenting to the search of his house for any illegal material." The district court further held that even if Brooks consented to a search only for red phosphorous, "all of the evidence relating to methamphetamine" was admissible under the plain view doctrine.

At trial, the prosecution offered the items found in Brooks's home to demonstrate Brooks's involvement in the conspiracy by showing that Brooks knew that the red phosphorous he was selling was used to manufacture methamphetamine. The prosecution also offered the testimony of law enforcement agents, co-conspirators, and witnesses, in addition to documentary evidence other than that seized from Brooks's home. Detective Farmer testified that agents found two ounces of red phosphorous in Brooks's car in the parking lot of the restaurant where Brooks was to deliver the red phosphorous to Moore. The prosecution offered into evidence Pyrotek shipping documents indicating that Brooks had ordered at least 56 pounds of red phosphorous from Pyrotek.

Moore, who had pleaded guilty to the conspiracy charge, testified that he first started cooking methamphetamine with Bill Hall, Brooks's nephew. Hall told Moore that Hall had gotten red phosphorous from Brooks. After Moore and Hall had a falling out, Moore started getting red phosphorous from Brooks. Moore testified that he got red phosphorous from Brooks on four to five occasions during the summer of 1999 for a total of seven ounces. From these seven ounces, Moore made by himself 43 grams of methamphetamine. Moore also testified that Brooks asked him about a method of making methamphetamine and that Moore showed Brooks some finished methamphetamine on at least one occasion.

Eric Magin, who also pleaded guilty to the conspiracy, testified that he began cooking methamphetamine with Brooks's nephew, Hall. After Margin and Hall had a falling out, Magin started buying red phosphorous directly from Brooks. Magin said that he purchased a total of about five to six ounces of red phosphorous from Brooks, from which he usually got a 50% yield of methamphetamine. On the day that Brooks was arrested, Magin picked up some red phosphorus from Brooks and saw Brooks with about a pound of red phosphorus. Magin also testified that he had gotten HEET and iodine from Brooks and that Brooks told Magin how much iodine to use to manufacture methamphetamine. Finally, Jerome Jacob Ware, who was in

9

the Hamilton County Jail with Brooks, testified that Brooks told him that he sold phosphorous to people in a "meth house" that was searched.

At the conclusion of the trial, the jury found Brooks guilty of conspiracy to manufacture methamphetamine. The jury was not asked to, and did not make, a finding as to the amount of methamphetamine attributable to the defendant. Brooks's presentence report concluded that Brooks had received 60 pounds of red phosphorous from Pyrotek. Because the prosecution produced testimony that the yield rate of red phosphorus to methamphetamine was 50%, the presentence report found that Brooks was responsible for 30 pounds, or 13.608 kg of methamphetamine. In a motion objecting to the presentence investigation report and at the sentencing hearing, Brooks specifically objected to the amount of methamphetamine attributed to him. The district court overruled these objections, finding the presentence report "accurate," and sentenced Brooks to 360 months in prison based on Brooks's criminal history and 21 U.S.C. § 841(b)(1)(A), which provides for ten years to life imprisonment for the manufacture of 50 grams or more of methamphetamine.

*United States v. Brooks*, 2002 WL 1021904, at *2-*3.

## V. ANALYSIS

Brooks contends his judgment of conviction and sentence should be vacated, set aside, or corrected because he received ineffective assistance of counsel. Brooks's first § 2255 claim amounts to a basic claim counsel was ineffective for failing to object to the indictment on the grounds it did not charge a drug amount, and therefore, the jury did not determine drug quantity beyond a reasonable doubt. Brooks's second § 2255 claim is the indictment was insufficient because it failed to allege the "elements" needed to manufacture methamphetamine. Brooks bases his § 2255 claims on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court will address Brooks's two claims of ineffective assistance of counsel separately after first identifying the criteria for analyzing an ineffective assistance of counsel claim.

The criteria for analyzing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant demonstrate two essential

10

elements: (1) counsel's performance was deficient (*i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment) and (2) counsel's deficient performance prejudiced the defense (*i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable). *Id.* at 687-88; *see also McQueen v. Scroggy,* 99 F.3d 1302, 1310-11 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997); *Sims v. Livesay,* 970 F.2d 1575, 1579-81 (6th Cir. 1992); *Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987). To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, a defendant must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88; *McMann v. Richardson,* 397 U.S. 759, 771 (1970). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied,* 508 U.S. 975 (1993); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir.), *cert. denied,* 518 U.S. 1027 (1996). There is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims,* 970 F.2d at 1579-80.

In order to demonstrate ineffective assistance of counsel, Brooks must show not only his attorney's representation fell below the standard of competence demanded of attorneys in criminal cases but also there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).

### A. *Failure to Allege Drug Amount*

Brooks claims *Apprendi* requires an indictment to specify the amount of drugs for which a

defendant is to be held accountable. Brooks then claims *Apprendi* requires the drug amounts must be supported by proof beyond a reasonable doubt and since the Judge determined drug amounts by a preponderance of the evidence at sentencing, counsel was ineffective for failing to challenge his the indictment and his sentence.

Brooks was convicted in March 2000 and sentenced to 360 months on June 23, 2000. *Apprendi* was decided on June 26, 2000. A notice of appeal was filed on July 3, 2000, and on direct appeal, the Sixth Circuit affirmed Brooks's conviction and vacated his sentence and remanded the case for resentencing on May 17, 2002. On the dates Brooks was indicted, tried, and sentenced neither this Court nor trial counsel could have predicted the Supreme Court would decide *Apprendi* as it did. *Apprendi* was decided after Brooks sentencing but before his appeal was heard. Counsel for Brooks raised *Apprendi* on appeal. The Sixth Circuit remanded Brooks case to the district court for re-sentencing under *Apprendi*. Petitioner was resentenced under *Apprendi*; thus, he is not entitled to any § 2255 relief on this claim.

Brooks's reliance on *Apprendi* is misplaced because he has previously received the benefit of *Apprendi* when this Court resentenced him after his case was remanded by the Sixth Circuit. Thus, his sentence does not violate *Apprendi's* rule. Moreover, Brooks cannot use a § 2255 motion to relitigate the same issues that were presented and decided on his direct appeal. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

12

On direct appeal Brooks argued he should be resentenced in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Sixth Circuit concluded an *Apprendi* violation occurred, the violation prejudiced Brooks, and Brooks was entitled to be resentenced. Brooks was resentenced by this Court and his sentence was reduced from 360 months to 180 months. In this case, Brooks faced a statutory maximum of twenty years and his actual sentence of one hundred and eighty months falls below the statutory maximum of 240 months. Consequently, Brooks has not been deprived of the constitutional rights the ruling in *Apprendi* sought to protect. Accordingly, he is not entitled to any § 2255 relief on this claim.

### B. *Insufficient Indictment*

Brooks claims counsel was ineffective for failing to make an insufficient indictment argument, *i.e.*, failing to argue the indictment did not allege the "required elements" to manufacture methamphetamine. Notably, Brooks has failed to identify the "required elements" that should have been included in the indictment.

In this § 2255 proceeding, the burden is on Brooks to prove he is entitled to relief. *Owen v. United States*, 660 F.2d 696, 702 (6th Cir. 1981); *Johnson v. United States,* 985 F.2d 560 (6th Cir. 1993) (unpublished table decision), *available in* 1993 WL 16707, at *2; *Durham v. United States,* 914 F.2d 256 (6th Cir. 1990) (unpublished table decision), *available in* 1990 WL 134780 *2-3; *United States v. Edmonson,* 922 F.Supp. 505 (D.Kan. 1996), *aff'd*, 107 F.3d 22 (10th Cir.), *cert. denied,* 521 U.S. 1128 (1997). Brooks has not identified the elements to which he is referring; thus, he has failed to prove he is entitled to relief. A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Short v. United States*, 504 F.2d 63 (6th Cir. 1974). Brooks makes a claim his indictment was insufficient because it failed to allege the

13

elements needed to manufacture methamphetamine but he fails to provide any factual support for this claim in violation of Rule 2(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURT. Nevertheless, the law does not require the indictment to include the elements needed to manufacture methamphetamine. Therefore, Brooks' factually unsupported allegations and conclusions do not provide him any § 2255 relief.

Additionally, the Sixth Circuit has held the sufficiency of the indictment is not subject to attack under 28 U.S.C. § 2255 unless the indictment is so defective on its face so as not to charge an offense under any reasonable construction. *See Eisner v. United States*, 351 F.2d 55, 56 (6th Cir. 1965); *United States v. Boyd*, 259 F.Supp.2d 699, 708 (W.D. Tenn, 2003). "An indictment is construed liberally in favor of sufficiency when the objection is made for the first time after verdict or judgment." *United States v. Harris*, 523 F.2d 172 (6th Cir. 1975) (citations omitted). Thus, to prevail, Brooks must prove the indictment "does not, by any reasonable construction, charge an offense for which the defendant is convicted." *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir. 1989)(citations omitted). In *Hamling v. United States*, 418 U.S. 87 (1974), the Supreme Court set the standard for testing the sufficiency of the indictment. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.*

Brooks' indictment charged an offense *i.e.*, conspiracy to manufacture methamphetamine. Brooks' indictment charged he and his named codefendants, "and others know and unknown to the Grand Jury, did combine, conspire, confederate, and agree to commit violations of Title 21, United States Code, Section 841(a)(1), that is, to unlawfully, knowingly, intentionally, and without

14

authority manufacture methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846" (Criminal File 1:99-cr-74, Court File No. 109). The indictment provided Brooks with information necessary for him to prepare a defense. Brooks has failed to identify any law to support his position the indictment is insufficient because it fails to allege the "elements" needed to manufacture methamphetamine. The Court notes that in his traverse (Court File No. 4), Brooks invites the Court "to consider the issue[] as one of first impression" and grant him relief. The Court declines Brooks' invitation. Consequently, Brooks is not entitled to any § 2255 relief on this claim.

## VI. CONCLUSION

Brooks has failed to demonstrate the conduct of his attorney was deficient and fell below an objective standard of reasonableness. Moreover, Brooks has failed to show his attorney's alleged errors caused him to suffer any actual prejudice. Therefore, Brooks is not entitled to any relief on his claim counsel was ineffective for failing to raise an *Apprendi* claim and for failing to contest the sufficiency of the indictment.

In conclusion, Brooks has failed to present any facts which establish his sentence is subject to collateral attack under 28 U.S.C. § 2255. Brooks is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his motion.

**E N T E R :**

                                      **/s/**
                        **CURTIS L. COLLIER**
           **UNITED STATES DISTRICT JUDGE**